IN THE COURT OF APPEALS OF TENNESSEE

AT KNOXVILLE

FILED

March 24, 1999

Cecil Crowson, Jr.
Appellate Court
Clerk

IN THE MATTER OF: ) C/A NO. 03A01-9808-PB-00249
    THE ESTATE OF A.W. WOLFE, )
    DECEASED. )
     )
BRENDA MATTHEWS, )
     )
    Plaintiff-Appellant, )
     ) APPEAL AS OF RIGHT FROM THE
     ) SEVIER COUNTY PROBATE COURT
v. )
     )
     )
     )
     )
RICHARD BRADLEY WOLFE, Executor, )
     ) HONORABLE CHARLES S. SEXTON,
    Defendant-Appellee. ) JUDGE


For Appellant                 For Appellee

ROBERT L. OGLE, JR.       R.B. HAILEY
Ogle & Wallace, P.C.       Sevierville, Tennessee
Sevierville, Tennessee


O P I N I O N


AFFIRMED AND REMANDED                Susano, J.

1

This lawsuit involves a claim filed by Brenda Matthews ("Matthews") against the Estate of A.W. Wolfe ("the Estate"). Mr. Wolfe died testate on October 17, 1989. In her complaint, Matthews seeks recovery for personal services rendered by her to Mr. Wolfe. The probate court granted the Estate's motion to dismiss. Matthews appeals, raising the sole issue of whether the probate court erred in dismissing her claim. We affirm.

I. *Facts and Procedural History*

Matthews testified that she began providing services to Mr. Wolfe around the time of his heart attack in March, 1977, and that she continued to assist him until he died at the age of 75. Matthews, who was approximately 42 years old at the time of Mr. Wolfe's death, had known Mr. Wolfe for most of her life. According to Matthews, she went to his home every day to cook for him, clean, help with work on his farm, and perform various other duties to assist him. She also testified that she frequently drove him to the store, as well as to various doctors and hospitals in Sevierville and Nashville.

Matthews testified that she was a close friend of Mr. Wolfe's. She denied the existence of any romantic relationship.

Matthews alleged that she took care of Mr. Wolfe for some twelve and a half years. She testified in her deposition that Mr. Wolfe had promised to "take care of" her if she would take care of him. Matthews had no written contract with Mr. Wolfe, nor was she paid any wages by him; however, she did

2

acknowledge that Mr. Wolfe had bought rings for her and had helped her pay for several Cadillacs over the years.

Shortly after Mr. Wolfe died in 1989, his will was admitted to probate. The will, which had been executed on October 8, 1977, makes no provision for Matthews; instead it leaves to his wife[1] "the amount to which she is entitled to receive as my wife under the laws of the State of Tennessee," and places the rest of the estate in trust for the benefit of his son, who is the executor of the Estate.

On or about January 12, 1990, Matthews filed a claim against the estate and a complaint in the probate court, seeking $42,700 as compensation for services rendered to Mr. Wolfe. In response, the Estate filed an exception to her claim and an answer to the complaint.

Following the filing of the Estate's answer, little or no action was taken in this case until August 18, 1992, at which time Matthews' deposition was taken by agreement of the parties. Apparently, Matthews subsequently failed to furnish various late-filed exhibits that had been requested during her deposition. Other than correspondence relative to the production of these exhibits, no additional action appears to have been taken in the case for over four years from the date of Matthews' deposition. On October 18, 1996, the deposition of Mr. Wolfe's wife, Helen B. Wolfe ("Mrs. Wolfe"), was taken. In March, 1997, Mr. Wolfe's son, Richard Bradley Wolfe, submitted his affidavit, and on April

---

[1]Mr. and Mrs. Wolfe had separated in early 1977, but were still married at the time of Mr. Wolfe's death.

3

29, 1997, the Estate filed a motion to dismiss Matthews'
complaint.  In the motion, the Estate cites several bases for
dismissal, including laches, failure to prosecute, frivolous
claim, and accord and satisfaction.  Significantly, it also
relies upon *Estate of Nease v. Sane*, C/A No. 03A01-9104-CH-00150,
1991 WL 220954 (Tenn.App., E.S., filed November 1, 1991,
McMurray, J.), a case involving similar facts in which this Court
found that the plaintiff's proof was insufficient to establish
the requisite contract, express or implied, between the plaintiff
and the decedent.  In support of its motion in the instant case,
the Estate attached as exhibits various documents, including the
will, Matthews' deposition, Mrs. Wolfe's deposition, and Richard
Bradley Wolfe's affidavit.  Matthews did not file any affidavits
or discovery material in response to the Estate's motion.

Following a hearing, the probate court found "the
Motion to Dismiss by the Executor to be well taken relying on the
[case of] *Estate of Nease v. Sane*."  It therefore dismissed the
complaint, and Matthews appealed.

II.  *Standard of Review*

In evaluating the Estate's motion to dismiss, the trial
court considered, among other things, the deposition testimony of
Matthews and Mrs. Wolfe, as well as the affidavit of Richard
Bradley Wolfe.  Rule 12.03, Tenn.R.Civ.P., provides that where
"on a motion for judgment on the pleadings, matters outside the
pleadings are presented to and not excluded by the court, the
motion shall be treated as one for summary judgment and disposed

4

of as provided in Rule 56...."  Such being the case here, we must review the decision of the trial court under the standard of Rule 56, Tenn.R.Civ.P., which provides in pertinent part as follows:

> ...the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law....

Rule 56.04, Tenn.R.Civ.P.

When reviewing a grant of summary judgment, an appellate court must decide anew if judgment in summary fashion is appropriate.  *Cowden v. Sovran Bank/Central South*, 816 S.W.2d 741, 744 (Tenn. 1991); *Gonzalez v. Alman Constr. Co.*, 857 S.W.2d 42, 44-45 (Tenn.App. 1993).  Since this determination involves a question of law, there is no presumption of correctness as to the trial court's judgment.  *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997); *Hembree v. State*, 925 S.W.2d 513, 515 (Tenn. 1996).  In making our determination, we must view the evidence in a light most favorable to the nonmoving party, and we must draw all reasonable inferences in favor of that party.  *Byrd v. Hall*, 847 S.W.2d 208, 210-11 (Tenn. 1993).  Summary judgment is appropriate only if no genuine issues of material fact exist and if the undisputed material facts entitle the moving party to a judgment as a matter of law.  Rule 56.04, Tenn.R.Civ.P.; *Byrd*, 847 S.W.2d at 211.

5

III.  *Applicable Law*


We have recently summarized the law applicable to cases such as the one now before us:

> In asserting a claim against an estate for services rendered the decedent, the cause of action necessarily is based upon either contract or quasi contract.  To bring a contract into existence there must be an offer and an acceptance of that offer.  The offer and acceptance may be expressed or implied from the parties' conduct.
>
> Contracts implied in fact arise under circumstances which, according to the ordinary course of dealing and common understanding of men, show a mutual intention to contract.  Such an agreement may result as a legal inference from the facts and circumstances of the case.
>
> In order to make out an implied contract for the rendition of services, facts and circumstances must be shown which amount to a request for services, which is the offer to contract, and the performance of the requested services, which is the acceptance of the offer.

**Cobble v. McCamey**, 790 S.W.2d 279, 281 (Tenn.App. 1989) (citations omitted).  Furthermore, we have stated that

> [w]here one renders services to another in the hope or expectation of a legacy, devise, or other provision by will for his benefit, without any contract, express or implied, but relying solely upon the generosity of the person for whom such services were rendered, he cannot recover for such services because of the failure of such person to make such testamentary provision in his behalf.
>
> Therefore, *if* the plaintiffs establish that the decedent expressly or impliedly requested the services, *and if* plaintiffs prove that they rendered those services with the expectation that they were to be paid in some

6

> manner for those services, then a contract is
> made out entitling the plaintiffs to recover
> against the estate for the reasonable value
> of those services.  This contract must be
> proven in the face of the "Dead Man's"
> statute (T.C.A. [§] 24-1-203) and the hearsay
> rule.

*Cobble*, 790 S.W.2d at 282 (citations omitted; emphasis in original); *see also* **Cotton v. Roberts' Estate**, 337 S.W.2d 776, 779-80 (Tenn.App. 1960).

T.C.A. § 24-1-203, commonly referred to as the "Dead Man's Statute," provides that

> [i]n actions or proceedings by or against
> executors, administrators, or guardians, in
> which judgments may be rendered for or
> against them, neither party shall be allowed
> to testify against the other as to any
> transaction with or statement by the
> testator, intestate, or ward, unless called
> to testify thereto by the opposite party....

Generally speaking, within the meaning of this statute, the phrase "transaction with or statement by" the deceased has been interpreted to "pertain to matters of personal communication between the claimant and the deceased." **Watts v. Rayman**, 462 S.W.2d 520, 522 (Tenn.App. 1970).

IV.  *Analysis*

*Cobble* contemplates two distinct factual scenarios in cases involving claims for personal services rendered to a decedent during his or her lifetime: first, where the claimant

has performed the services pursuant to an express or implied contract between the claimant and the decedent; and second, where the claimant has performed the services without a contract but with the mere hope or expectation of being rewarded in the decedent's will. *See* **Cobble**, 790 S.W.2d at 281-82. It is clear that under the latter scenario, the claimant generally "cannot recover for such services because of the failure of [the decedent] to make such testamentary provision in his behalf." **Id.** at 282; *see also* **Cotton**, 337 S.W.2d at 780.

The probate court found that the facts of the instant case bring it within the second category listed above. Implicit in the court's holding was a finding that, in accordance with **Estate of Nease**, 1991 WL 220954, no contract had existed between Matthews and Mr. Wolfe, and that Matthews had rendered the services to Mr. Wolfe in the hope or expectation of being rewarded in the latter's will. The probate court thus determined that Matthews was precluded from recovery.

The only sworn testimony in the record is found in Matthews' deposition, Mrs. Wolfe's deposition, and Richard Bradley Wolfe's affidavit. As noted earlier, Matthews acknowledges that she had no written contract with Mr. Wolfe. The only specific evidence relevant to the existence of some other type of contract is found in Matthews' deposition. The deposition, consisting of some 75 pages, contains much testimony regarding statements allegedly made to Matthews by Mr. Wolfe; none of these statements are more specific than her assertion that "he told me he was going to take care of me." This court

8

has previously stated that evidence of statements of this type is "ambiguous, vague, and indefinite, and does not prove the elements of a contract." *Cotton*, 337 S.W.2d at 779. Thus, it is by no means clear that the testimony offered by Matthews, even if admissible, would constitute evidence of a contract. However, even assuming, without deciding, that this testimony is sufficient to create an issue of material fact as to whether a contract existed, it nevertheless pertains to "transaction[s] with or statement[s] by the testator," *i.e.*, Mr. Wolfe. T.C.A. § 24-1-203. As such, the testimony is inadmissible under the Dead Man's Statute, which, in the context of this case, prohibits Matthews from testifying against the estate as to statements made to her by Mr. Wolfe. *Id.*

The remaining, admissible portions of Matthews' deposition do not make out a genuine issue of material fact as to whether an express or implied contract existed. As explained in *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993), the facts upon which the nonmovant relies must be admissible at trial; accordingly, we may only consider admissible evidence in reviewing this grant of summary judgment. Thus, Matthews' testimony reflects a rendering of services, and nothing more. By the same token, the record contains no other testimony that would establish an express or implied contract.

Having considered the record in this case, we find that there is no admissible evidence of a contract, express or implied, between Matthews and Mr. Wolfe. Rule 56.04, Tenn.R.Civ.P. The material filed by the Estate reflects an

9

absence of a contract; the record as a whole does not contain any *admissible* countervailing evidence. In the absence of any evidence of a contract, Matthews' claim rests solely on her hope or expectation of being rewarded in Mr. Wolfe's will; this being the case, Mr. Wolfe's failure to make testamentary provision on her behalf does not entitle her to recover for the services rendered to him. **Cobble**, 790 S.W.2d at 282; **Cotton**, 337 S.W.2d at 780. Therefore, the Estate was and is entitled to judgment as a matter of law. Rule 56.04, Tenn.R.Civ.P. Accordingly, we hold that the probate court correctly dismissed Matthews' claim.

## V. *Conclusion*

The decision of the probate court dismissing the appellant's complaint is affirmed. Costs on appeal are taxed to the appellant. This case is remanded to the probate court for the collection of costs assessed there, pursuant to applicable law.

_____
Charles D. Susano, Jr., J.

CONCUR:


_____
Herschel P. Franks, J.


_____
Don T. McMurray, J.

10